**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 19, 2013**

# In the Court of Appeals of Georgia

A12A2394. BRYANT v. THE STATE

BARNES, Presiding Judge.

Following a jury trial, Dwayne Bryant was convicted of trafficking in cocaine and possession of a firearm during the commission of felony. He filed a motion for new trial which the trial court denied, and he now appeals from that order. On appeal, Bryant contends that the trial court abused its discretion by dismissing a juror after "significant deliberations" had occurred. Following our review, and upon finding that the trial court did not abuse its discretion in removing an ill juror, we affirm his convictions.[1]

---

[1] "The evidence will not be summarized because the general grounds were not argued." *Tanner v. State*, 242 Ga. 437 (249 SE2d 238) (1978).

The record reflects that at the close of evidence in Bryant's trial on Thursday, January 10, 2008, the jury deliberated for a short time before adjourning for the day. The jury deliberated for a full day on Friday, January 11, after which at approximately 6:10 p.m. it inquired to the trial court via note as to "what the next step is if we cannot reach a decision." The trial court brought the jury in and inquired if additional deliberation would help, and the foreperson responded in the affirmative, after which the jury returned to the jury room. While the jury was out, Bryant requested a mistrial on the basis that by allowing the jury to continue deliberating, a juror or jurors would be more inclined to "give up their position and to compromise to the extent that they would give up what they are holding out [for]." The trial court denied the motion. At 6:25 p.m., the jury notified the trial court that it would like to continue deliberating for another hour "then decide whether to continue this evening or on Monday," to which the trial court responded by writing "fine" on the note. At 7:08 p.m. the jury sent in a note informing the trial court that for "charges 1 and 2 we are unable to reach a decision. We are able to reach a decision on charge 3. No amount of further deliberation would change this decision." The trial court called the jury in and gave them an *Allen* charge, after which the jury continued deliberation.[2] Bryant renewed

---

[2] See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896).

2

his motion for retrial, and also objected to the *Allen* charge. The trial court denied his motion and overruled the objection. At 8 p.m. the trial court received a note from the jury that they wished to "reconvene Monday at 9:00 a. m." The trial court called the jury in and after inquiring as to whether any of the jurors had issues related to reconvening on Monday, excused the jury.[3]

At 9:45 a.m. Monday morning, the trial court reconvened and notified the parties that earlier that morning, the court had received a call from juror 12 that she was at the emergency room at South Fulton Medical Center. The trial court related that it had verified, as best it could under the Heath Insurance Portability and Accountability Act ("HIPAA") laws, that the juror was at the hospital, and provided the parties with a note signed by a registered nurse at the hospital that "[juror 12] is a patient at South Fulton Medical Center." The trial court informed the parties that it would allow the jury to continue deliberations with the alternate juror. Bryant objected and again moved for a mistrial, asserting that continued deliberations after not being able to reach a consensus were putting "undue pressure" on the jury to

---

[3]During the proceedings, the alternate juror asked about his role during the extended deliberations, and the trial court informed him that "it's the Court's practice to select an alternate, so if somebody were unable to continue to deliberate for a legal cause, we would then at that point in time — I would instruct all of you as to what . . . steps we would need to take at that point."

3

reach a verdict. Bryant also requested that the judge recess the jury until it could determine when juror 12 would return. The trial again indicated that HIPAA laws restricted the medical information it could acquire from the hospital, and that from juror 12's conversation with the court's judicial assistant, "[the juror] had the flu and was . . . in a bad way."

The trial court denied Bryant's motions, called the jury in, apprised them of the juror's illness, and informed the alternate that she would be seated as a member of the jury for continued deliberations. The jury reached a unanimous verdict later that morning.

1. Bryant contends that the trial court abused its discretion and infringed on his right to a fair trial and to be present by dismissing the juror after "significant deliberations" had begun. He contends that the trial court made its decision to replace the juror without a hearing or inquiry or the presence of the State or Bryant. We do not agree.

> OCGA § 15-12-172 provides: If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated.

4

As this Court has explained:

> The controlling law has established a procedure for addressing the question of removal of a juror for cause: The trial court must exercise its discretion in removing a juror, and it may effect such a removal even after deliberations have begun. There must be some sound basis upon which the trial judge exercises his discretion to remove the juror. A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process. Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion.

(Citation and punctuation omitted.) *Semega v. State*, 302 Ga. App. 879 (691 SE2d 923) (2010).

Here, the trial court did not merely rely upon the juror's own claim of illness, but made an independent inquiry into the circumstances and then reported its finding to Bryant and the State. It allowed both sides input before it determined that the juror would be replaced with the alternate. This case differs significantly from *Scott v. State*, 219 Ga. App. 798, 800 (2) (466 SE2d 678 ) (1996), relied upon by Bryant. In that case, we granted Scott a new trial because the trial court "replaced the sick juror with the alternate, without consulting the State or Scott. The court did not make its

own independent determination that the juror was in fact ill and could not complete deliberations, which it should have done."

We reached a different conclusion in *Cleveland v. State*, 218 Ga. App. 661, 663-664 (4) (463 SE2d 36) (1995). In that case, after the jury was unable to reach a verdict and was given an *Allen* charge, one of the jurors informed the trial court that he was concerned about a possibly cancerous growth on his ear and that an operation was scheduled that day to remove the growth. The trial court dismissed the juror and replaced him with the alternate over the defendants' objections that "the system was being manipulated to avoid a deadlock." Id. at 664 (4). When the foreman informed the trial court that the jury was close to a verdict, the trial court considered calling the excused juror's doctor to inform him that the juror would be late, but upon considering "the legal ramifications of returning a juror after announcing he was excused," decided to replace the juror. Id. We found that the trial court did not abuse its discretion under OCGA § 15-12-172, because

> [a]lthough the court may not have excused [the juror] had it first inquired and discovered that a verdict might be reachable without jeopardizing the scheduled surgery, it was not an abuse to do so. Hurrying to a verdict because of anxiety about keeping an important medical appointment relating to the juror's own health could itself infect the verdict.

6

*Cleveland*, 218 Ga. App. 664 (4).

The present case is more similar to *Cleveland* than *Scott*. In this case, the trial court conducted an independent investigation into the juror's illness and "developed some factual support for its decision to remove the [juror] for a legally relevant reason." *State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006). The trial court did not abuse its discretion in determining that delaying the deliberations or awaiting the return of a sick juror could have a prejudicial effect on the outcome.

> [OCGA § 15-12-172] implicitly authorizes the trial court to exercise its discretion. But it must be an informed exercise, since the erroneous replacement of a juror may under certain circumstances deprive a defendant of his valued right to have his trial completed by a particular tribunal, his sixth amendment right to a fair, impartial and representative jury, and his due process rights grounded in the entitlement to procedures mandated by state law.

*Herring v. State*, 224 Ga. App. 809, 811 (1) (481 SE2d 842) (1997). Here, the record shows that the trial court made an informed exercise of its discretion and we discern no abuse of that discretion in dismissing the juror in these circumstances.

2. The Supreme Court of Georgia has held that a trial court commits error when it communicates with a jury in the absence of the defendant or his counsel because

"a defendant on trial must be present when the court takes any action materially affecting his case." (Citations omitted.) *Burtts v. State*, 269 Ga. 402, 403 (3) (499 SE2d 326) (1998). Although Bryant appears to also contend that he was absent from the deliberations when the juror was dismissed and replaced with an alternate, the record reflects that Bryant's attorney participated in the discussion. While the record does not reflect whether Byant himself was either absent or present,

> the absence of this information . . . does not prove [Bryant] was not in the courtroom at the time discussions were had about the [ill] juror. We must apply the presumption of regularity and conclude that the trial court conducted the trial properly by making sure appellant was present when necessary.

*Milinavicius v. State*, 290 Ga. 374, 377 (3) (721 SE2d 843) (2012).

*Judgment affirmed. McFadden and McMillian, JJ., concur.*